615 A.2d 920

**Luigia SCIULLI, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HEALTH CENTER HOSPITAL SERVICE CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 17, 1992.

Decided Sept. 1, 1992.

Sara J. Klein, for petitioner.

J. Lawson Johnson, for respondent.

Before CRAIG, President Judge, PELLEGRINI, J., and BLATT, Senior Judge.

PELLEGRINI, Judge.

Luigia Sciulli (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming the Referee's decision terminating payment of her medical benefits as of the date the Referee found she was able to return to work rather than the date of the Referee's decision. Claimant also appeals the Referee's release of the money escrowed from her weekly benefits for potential attorney's fees back to her Employer.

Claimant was employed by Health Center Hospital Service Corporation (Employer) as a laundry worker. On April 2, 1987, during the course of her employment, Claimant was injured when she was struck on the head and left eye by the lid of the laundry cart. Pursuant to an agreement for compensation dated May 21, 1987, Claimant began receiving total weekly disability compensation.

On December 22, 1988, the Employer filed a termination petition alleging that Claimant was able to return to her regular occupation as a laundry worker without any residual disability as of December 15, 1988. The Employer also requested a supersedeas to suspend payments until a decision was rendered by the Referee. Claimant filed a timely answer denying her Employer's allegations. By interlocutory order dated February 28, 1989, the Referee denied the Employer's request for a supersedeas but ordered the Employer to deduct 20% of Claimant's compensation for placement into escrow for possible payment of counsel fees.[1]

At the hearing, Claimant offered the deposition testimony of Guy R. Corsello, M.D., Paul T. Tobar, M.D., and Omar I. Bhutto, M.D. in support of her claim that she had not fully recovered from her work-related injury because she suffered from post-concussion syndrome and depression. Claimant also offered into evidence her costs of litigation totalling $2,368.45 and itemized medical expenses totalling $26,793.37 which had not been paid by her Employer. The Employer offered the deposition testimony of Hirsch Wachs, M.D. and David Lee Spence, M.D., who both testified that Claimant was fully recovered from her work-related injury. They further testified that the major depression with regression that she suffered was not related to her work injury, but was the result of her son being murdered by his wife on June 30, 1987.

The Referee found that the testimony of Drs. Wachs and Spence was credible and convincing, and the testimony of Drs. Corsello, Tobar and Bhutto was not. Consequently, the Referee found that Claimant had recovered from her work-related

1. The Referee's order did not specify for whose benefit the funds had been placed into escrow to pay for attorney fees.

injury and was able to return to her pre-injury job as a laundry worker as of December 15, 1988. Based on the Referee's finding that Claimant's medical expenses were not reasonable, necessary or causally related to her work injury, the Referee ordered the Employer to terminate Claimant's benefits as of December 15, 1988. Because the Referee ultimately determined that Claimant's costs of litigation also were not reasonable, necessary or causally related to her work injury, he ordered the release of the escrow funds for counsel fees, without explanation, to the Employer.

Claimant filed an appeal, arguing that the Referee's decision failed to order the payment of her medical bills and that the Referee erred by releasing the escrow funds to her Employer. On appeal, the Board affirmed the Referee's decision based on its determination that there was substantial evidence to support the finding that the Claimant's post-injury depression was not related to her work injury, and, therefore, her medical bills should not be reimbursed. Claimant then filed an appeal with this court.[2]

■ Claimant first contends that the Referee and Board erred by retroactively cutting off her medical benefits as of December 15, 1988, the date it determined she could return to work, and, instead, should have ordered her Employer to continue paying her medical expenses through December 28, 1990, the date of the Referee's decision. We agree with Claimant that generally an Employer is obligated to continue paying medical benefits for a work-related injury up until the date of the Referee's decision when Claimant alleges that his or her work-related injury has failed to resolve itself. *Loose v. Workmen's Compensation Appeal Board (John H. Smith Arco Station)*, 144 Pa.Commonwealth Ct. 332, 601 A.2d 491 (1991). *See also Johnson v. Workmen's Compensation Appeal*

2. Our scope of review in a workmen's compensation case is to determine whether constitutional rights have been violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

*Board (Albert Einstein Medical Center)*, 137 Pa.Commonwealth Ct. 176, 586 A.2d 991 (1991).

In *Loose*, this court relied upon Section 306(f)(2)(ii) of The Pennsylvania Workmen's Compensation Act (Act) [3] in determining that an employer is required to continue payment of a claimant's medical expenses during the pendency of any petition for review of the necessity of such medical expenses, and does not allow the employer's petition for review to act as an automatic or discretionary supersedeas. The reasoning behind this holding is that a determination has already been made that the employer is obligated under the Act to pay benefits including medical bills. Until that determination is changed, if there is any dispute as to whether the treatment is necessary or reasonable, the presumption that the Employer is obligated to pay for medical services rendered to the claimant that could arguably be related to the original work injury remains in effect. This allows claimants to receive needed medical care which is presumed to be work related, and protects them from the potentially devastating economic consequences stemming from determinations which find medical services already rendered to be unreasonable or unnecessary. *Johnson*, 137 Pa.Commonwealth at 181, 586 A.2d at 994.

However, such a right to continuing payment of medical services is not absolute. As we said in *King v. Workmen's Compensation Appeal Board (Wendell H. Stone Co.)*, 132 Pa.Commonwealth Ct. 292, 295, 572 A.2d 845, 847 (1990), "[W]e believe that the employer in a workmen's compensation case is responsible for paying only those expenses related to the work-related disability. We know of no workmen's compensation cases where an employer is responsible for paying any expenses not related to the accident or injury at work."

---

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(2)(ii). That section provides the following:

The employer shall have the right to petition the department for review of the necessity or frequency of treatment or reasonableness of fees for services provided by a physician or other duly licensed practitioner of the healing arts. Such a petition shall in no event act as a supersedeas, *and during the pendency of any such petition, the employer shall pay all medical bills.* (Emphasis added.)

*See also Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.),* 141 Pa.Commonwealth Ct. 253, 595 A.2d 697 (1991).[4]

 The Employer contends that the psychological and related medical services rendered to Claimant were in no way related to the original injury for which they agreed to pay compensation, and, accordingly, are not obligated to pay for them. In this case, the Referee granted the Employer's termination petition based on the evidence presented that ·Claimant's depression was the result of her son being murdered, and not her work-related injury. This was an intervening event that changed the factual basis upon which compensation was originally paid. Because of that change in the factual basis, the presumption that medical treatment was necessitated· by the work-related injury no longer exists and, correspondingly, the Employer's obligation to pay for those treatments, absent a further finding by the Referee, also no longer exists. Consequently, because the intervening event that caused Claimant's injury was not work related and extinguished the presumption upon which the Employer's obligation to pay existed, the Board did not err by terminating Claimant's benefits *as of the date she was able to return to her employment,* rather than the date of the Referee's decision.[5]

 Claimant also contends that the Referee erred by releasing the funds escrowed for the payment of attorney's fees back to the Employer because the Referee had no authority to do so. We agree. Once a claimant is awarded compensation benefits, she has full use of those benefits until

4. We note that *Loose* and *Johnson* involved claimants who had preexisting conditions which were affected as a result of the original work injury, and not an intervening event unrelated to claimant's work injury as in this case.

5. Although the Employer was relieved of paying Claimant's medical benefits as of December 15, 1988, it was obligated to continue paying Claimant her weekly compensation up until December 28, 1990, the date of the Referee's decision terminating those benefits.

such time that they are modified, suspended, or terminated. Nowhere does the Act authorize the Referee to award counsel fees to an employer. Here, Claimant was awarded benefits on May 21, 1987, for her work injury. She was entitled to continue receiving the entire amount of those benefits until the Referee rendered his decision on December 28, 1990, that she was able to return to work as of December 15, 1988. As such, the Referee erred in ordering the Employer to deduct 20% for attorneys fees from Claimant's compensation and in returning those funds to the Employer.

Accordingly, the portion of the Board's decision terminating Claimant's benefits as of December 15, 1988, is affirmed, and the portion of the Board's decision releasing the escrow funds to the Employer is reversed. Claimant is entitled to the total amount of funds held in escrow which was released to the Employer in error.

## ORDER

AND NOW, this 1st day of September, 1992, that portion of the order of the Workmen's Compensation Appeal Board, dated December 23, 1991, No. A91–0114, terminating Claimant's benefits as of December 15, 1988, is affirmed, and that portion of the same order releasing the escrow funds to the Employer is reversed. Claimant is to be awarded the total amount of the funds held in escrow which was released to the Employer in error.